UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PACERS BASKETBALL, LLC,<br><br>    Petitioner/Movant<br><br>vs.<br><br>ADIDAS AMERICA, INC.,<br><br>    Respondent. | Case No.: 1:21-MC-00004-TWP-MJD<br><br>Related Case: *Brian Bowen, II v. adidas America, Inc., et al.,* Case No. 3:18-cv-3118 |

**ADIDAS AMERICA, INC.'S RESPONSE IN OPPOSITION TO PACERS BASKETBALL, LLC'S MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS**

Respondent adidas America, Inc. ("adidas") respectfully submits this response in opposition to Petitioner/Movant Pacers Basketball, LLC's (the "Pacers") Motion to Quash Subpoena to Produce Documents, Doc. 1. The subpoena is reasonable in scope and requests documents that are relevant and necessary to the underlying litigation. The documents are unavailable from other sources, and any confidential documents will be thoroughly protected by a confidentiality order already in place. Accordingly, the Pacers' motion should be denied, and the Pacers should be required to produce all documents in its possession, custody, or control responsive to the lawfully issued subpoena.

**RELEVANT BACKGROUND**

This discovery dispute arises out of a subpoena issued to the Pacers in connection with *Brian Bowen, II v. adidas America, Inc., et al.*, Case No. 3:18-cv-3118 (the "Bowen Case"), a case brought by Brian Bowen, II ("Mr. Bowen") against adidas and several other defendants in the United States District Court for the District of South Carolina. In the Bowen Case, Mr. Bowen alleges that the defendants conspired among themselves and with Mr. Bowen's own

1

father to enrich Mr. Bowen's father in exchange for steering Mr. Bowen to a college basketball program of their choosing, and in doing so caused Mr. Bowen to lose the "opportunity to enter the NBA draft as a first or second round draft pick after only one or two years of experience playing Division I basketball and associated impact on his lifetime career earnings." *See* Amended Complaint in the Bowen Case ¶ 299 (Exhibit A).  Mr. Bowen seeks millions of dollars in damages from adidas and the other defendants.  *See* Mr. Bowen's supplemental Rule 26(a)(1)(A)(iii) initial disclosure (Exhibit B).

For the sake of judicial economy, adidas will refrain from providing a detailed discussion of the merits—or more accurately, the lack thereof—of the Bowen Case, but it vigorously denies any wrongdoing on the part of the company and believes it will obtain summary judgment. Nevertheless, in the meantime, adidas must defend itself against Mr. Bowen's fanciful claim that he failed to secure a multi-million dollar NBA rookie contract solely because he did not play Division I college basketball, and not because of any of his actual or perceived shortcomings as a player.  Accordingly, adidas has diligently engaged in discovery related to Mr. Bowen's alleged damages.

As part of adidas' discovery efforts necessary to refute Mr. Bowen's alleged damages, adidas issued a duly authorized subpoena (the "Subpoena") to the Pacers on November 20, 2020. *See* Doc. 1-1 (Subpoena).  For the second consecutive season, Mr. Bowen is a "two-way" player for the Pacers, a professional NBA basketball team, and the Fort Wayne Mad Ants, the Pacers' development team.  *See* Doc. 1 at 1.  The Subpoena contains eleven narrowly tailored requests for documents related to the Pacers' decisions each season to hire Mr. Bowen as a player and the effect, if any, his lack of experience playing college basketball and his experience prior to

joining the Pacers actually had on the Pacers' decision to hire him. *See* Doc. 1-1 at 23-25 (Subpoena).

The subpoenaed documents are directly relevant to Mr. Bowen's claim that he is entitled to millions of dollars in damages for lost future earnings because of the purported negative impact his failure to play Division I college basketball allegedly had on his prospects as an NBA player. Information regarding the Pacers' decisions to sign Mr. Bowen, and how and to what extent his experiences prior to and since joining the team have impacted the team's decision-making, is highly probative on the issue of whether Mr. Bowen's failure to play in the NCAA had the effect on his career that he claims. This information is not available from any source other than the Pacers.

In sum, the documents requested by the Subpoena are highly relevant, crucial to adidas' defense against Mr. Bowen's damages claims (baseless as those claims may be), and unavailable from any source other than the Pacers. The Court should decline the Pacers' motion and require the team to produce all documents responsive to the Subpoena, subject to the protections of the comprehensive confidentiality order entered in the Bowen Case, which is discussed in detail below.

## **STANDARD OF REVIEW**

Non-party subpoena recipients are subject to the same scope of discovery permitted from parties pursuant to Federal Civil Procedure Rule 26. *See, e.g.*, *Noble Roman's Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) ("The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45.") (citations omitted). "The party seeking to quash a subpoena bears the burden of establishing the subpoena falls within the Rule 45 criteria [for quashing subpoenas]." *Patrick Collins, Inc. v. John Doe No.*

*3*, No. 1:12-cv-844, 2013 WL 820307, at *1 (S.D. Ind. Mar. 5, 2013) (citation omitted). "As with other discovery issues, deciding whether to grant a motion to quash [a subpoena] lies within the sound discretion of the district court." *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 516 (N.D. Ind. 2012) (citations omitted).

## ANALYSIS

As indicated in the Pacers' motion, the Pacers and adidas have been able to resolve the issues regarding Requests Number 7 and 8 in the Subpoena. Additionally, adidas has now obtained the two-way player contract between the Pacers and Mr. Bowen called for by Request Number 4 through another source, so adidas is no longer seeking production of that contract from the Pacers. Therefore, the requests in the Subpoena remaining at issue in the Pacers' motion to quash are Requests Number 1-3, 5, 6, and 9-11. The Pacers should be required to produce all documents responsive to these requests because such documents are relevant, necessary to defend against Mr. Bowen's claims, unavailable from any source other than the Pacers, and any confidential documents will be adequately protected by the confidentiality order entered by the Court in the Bowen Case.

In its motion to quash, the Pacers takes the extreme position that it should not be required to respond to Requests Number 1-3, 5, 6, and 9-11 <u>at all</u> because these requests purportedly seek trade secrets or confidential commercial information, and, according to the Pacers, neither the confidentiality order already entered in the Bowen Case <u>nor any other conceivable confidentiality or protective order</u> would be sufficient. *See* Doc. 1 at 6, 17-20 ("[T]he Confidentiality Order **or any protective order** would be insufficient . . . ." (emphasis added)). The Pacers further argue that Request Number 6, which calls for the production of "documents concerning interest by other NBA teams in signing Bowen Jr. to a player contract" is unduly

4

burdensome because the Pacers "cannot speak to the interest of *other* NBA teams," and it posits that the documents should be sought from other NBA teams who would be in possession of them. *Id.* at 16-17. Both of these arguments fail and should not excuse the Pacers from responding to the lawful Subpoena.

> **I.     The Subpoena is Narrowly Tailored to Seek Documents that are Highly Relevant and Necessary to Rebut Mr. Bowen's Claimed Damages.**

The Pacers' motion mischaracterizes the breadth of the subpoenaed documents and discusses at length the proprietary nature of the Pacers' algorithms for evaluating players, its "comprehensive processes and methodologies which are used to evaluate players nationally and internationally," and its partnership with third-party vendors to develop customized databases and software for player assessments. *See* Doc. 1 at 8-16. The Subpoena does not ask for the Pacers to disclose its methods, processes, or databases for evaluating and assessing all players. Doc. 1-1 at 23-25 (Subpoena). Rather, ten of the eleven requests in the Subpoena ask for narrowly tailored categories of documents relating to <u>Mr. Bowen only</u>, and the eleventh is similarly limited in scope.[1] *See id.* adidas is not asking for the Pacers' evaluations or assessments of all players or for any information on how it goes about that process. adidas is instead asking for a much narrower set of documents relating to Mr. Bowen specifically and the Pacers' hiring of him and evaluation of him as a player.

The subpoenaed documents relating to the Pacers' hiring and evaluation of Mr. Bowen are indisputably relevant to the Bowen Case, which is premised entirely on the notion that Mr.

---

[1] The only request that is not explicitly limited to Mr. Bowen, Request Number 11, asks for documents "sufficient to show the Pacers' assessment of the [Australian] National Basketball League ("NBL"), including its views on the viability of playing basketball in the NBL as a path to the NBA." Doc. 1-1 at 25. Thus, this request also does not seek all documents regarding the Pacers' methods for evaluating players, but instead merely seeks documents "sufficient to show" the Pacers' general views on the viability of playing in the NBL as a path to the NBA, which is relevant to the Bowen Case because Mr. Bowen played in the NBL prior to joining the Pacers.

5

Bowen's NBA career prospects were directly and provably harmed by Defendants' actions. In addition to being relevant, the documents are also necessary to defend against Mr. Bowen's claim that he is entitled to millions of dollars in damages from adidas and the other defendants for lost future earnings as a result of the alleged harm to his NBA career prospects. Furthermore, documents regarding the Pacers' hiring of Mr. Bowen are not available from any source other than the Pacers. The fact that no competitor of the Pacers is a party to the Bowen Case further weighs against granting the Pacers' motion to quash on the ground that the Subpoena requests commercially sensitive information. *See, e.g.*, *Everco Indus., Inc. v. O.E.M. Prods. Co.*, 362 F. Supp. 204, 206 (N.D. Ill. 1973) (considering the parties' status as competitors in whether to order production of certain commercial documents).

## II. Any Confidential Information Will be Thoroughly Protected by the Confidentiality Order Entered in the Bowen Case.

The Pacers' primary objection to the Subpoena is that it calls for the production of confidential commercial information. A confidentiality order (the "Confidentiality Order") has already been entered in the Bowen Case, and it was provided to the Pacers along with the Subpoena. *See* Doc. 1-1 at 4-17 (Confidentiality Order). The Pacers acknowledge the Confidentiality Order in its motion but insist that neither it, <u>nor any other conceivable protective order</u>, would be sufficient to protect its information. adidas does not dispute that many, and perhaps all, of the subpoenaed documents could be appropriately designated as confidential under the Confidentiality Order, but adidas does dispute the rather hyperbolic claim that <u>no</u> confidentiality order could adequately protect the subpoenaed documents. The Subpoena seeks documents about basketball, not the nuclear launch codes.

The Confidentiality Order entered by the court in the Bowen Case is binding on all parties and their counsel. *Id.* at 13 ¶ 14. The Order explicitly covers documents produced by

6

non-parties pursuant to a subpoena, which would include documents produced by the Pacers in response to the Subpoena, and permits a non-party subpoena recipient to designate documents as "confidential" if they contain trade secrets, confidential research, commercial information, or other sensitive information, and such designation has the same force and effect as if made by a party. *Id.* at 11 ¶ 11 and 5 ¶ 3. Use of any documents designated as confidential is prohibited for "any purposes whatsoever other than preparing for and conducting" the Bowen Case. *Id.* at 6 ¶ 5.a. Further, the Order strictly limits the individuals to whom documents designated as confidential may be disclosed, and any disclosure to a person not employed by the parties to the Order or their counsel requires execution of an acknowledgment and agreement to be bound by the terms of the Order prior to the disclosure. *Id.* at 6 ¶ 5.b. If a party receives a subpoena or other request for the production of any documents designated as confidential, the recipient of the subpoena cannot produce the documents until it provides notice to the party who produced the documents so that it may move to quash or limit the subpoena or request if desired. *Id.* at 7-8 ¶ 5.c. The Order also requires a party seeking to file a document designated as confidential to redact the document with the consent of the producing party, or submit the document solely for an *in camera* review or file it under seal when appropriate. *Id.* at 8-9 ¶ 6. At the end of the Bowen Case, the provisions of the Order restricting the use of confidential documents will remain in place, and all confidential documents must be returned to the producing party or destroyed. *Id.* at 10 ¶ 9.b. This is just a summary of the numerous protections provided for by the Confidentiality Order.

Thus, the Confidentiality Order already in place in the Bowen Case imposes a comprehensive set of restrictions and obligations to ensure the protection of confidential documents produced in the litigation, including specifically those produced by non-party

subpoena recipients such as the Pacers.  The Pacers contend, however, that neither this Confidentiality Order, nor any other conceivable protective order, would be sufficient.  This position is unreasonable.  Given its numerous protections, the Confidentiality Order would thoroughly safeguard any confidential information of the Pacers, just as it does for adidas' own commercially confidential and sensitive documents produced in the Bowen Case.  Even though adidas maintains that the Confidentiality Order is sufficient to protect the Pacers' documents, adidas' counsel offered during discussions with counsel for the Pacers to enter into any reasonable protective order that the Pacers would like, including one with an option to designate documents for "Attorney's Eyes Only," but the Pacers' attorney stated that there is no protective order that the Pacers would accept as adequate.

The Confidentiality Order provides thorough protection for the Pacers' documents responsive to the Subpoena, and the Pacers should, therefore, be required to produce all documents responsive to Requests Number 1-3, 5, 6, and 9-11, subject to the terms of the Confidentiality Order.  *See, e.g.*, *Brake Plus LLC v. Kinetech LLC*, No. 1:14-cv-1415, 2015 WL 630246 (S.D. Ind. Feb. 11, 2015) (denying a motion to quash a subpoena requiring the production of confidential commercial documents subject to the provisions of a protective order and an additional requirement to provide notice to the non-party about whom the documents pertained and an opportunity to designate them as confidential); *Apex Colors, Inc. v. Chemworld International Ltd., Inc.*, No. 2:14-cv-273, 2014 WL 7183631, at *3-4 (N.D. Ind. Dec. 16, 2014) (denying a motion to quash a subpoena seeking the production of confidential commercial information and holding that a confidentiality order limiting disclosure of the confidential information, along with a requirement that counsel for the receiving party obtain permission from the court before disclosing the documents to anyone, adequately protected the subpoena

recipient); *Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22, 26 (D.D.C. Apr. 14, 2011) ("The existence of a protective order weighs against quashing the subpoena on commercial information grounds because the protective order is designed to protect and prevent public disclosure of confidential and sensitive business information, like that potentially at issue here.") (citation omitted); *Cohen v. City of New York*, 255 F.R.D. 110 (S.D.N.Y. 2008) (denying a motion to quash a subpoena and ordering the production of confidential commercial videotapes "subject to a protective order strictly limiting the use of the tapes to the instant litigation").

### III.     Request Number 6 is Not Unduly Burdensome.

Request Number 6 calls for the production of "[a]ll documents concerning interest by other NBA teams in signing Bowen Jr. to a player contract." Doc. 1-1 at 24. The Pacers argue that this request is unduly burdensome because it is not privy to this information, and the request should be directed at other NBA teams who are in possession of such documents. Doc. 1 at 16-17. The request, however, does not ask for the Pacers to produce documents it does not have. Pursuant to Rule 45(a)(1)(A)(iii) and the Definitions and Instructions provided in the Subpoena, the Pacers are required only to produce responsive documents in its possession, custody, or control. Doc. 1-1 at 22 ¶ 20. The request is further limited by the Definitions and Instructions to the time period from January 1, 2017, to the present. *Id.* at 23 ¶ 24. This request is reasonable in scope, and the Pacers' objection that it is unduly burdensome is unfounded.

### CONCLUSION

For the reasons set forth herein, adidas respectfully requests that the Court deny the Pacers' motion to quash the Subpoena, Doc. 1, and require the Pacers to produce all documents in its possession, custody, or control that are responsive to Requests Number 1-3, 5, 6, and 9-11 of the Subpoena within ten (10) days of entry of an Order denying the motion to quash.

Respectfully submitted,

*/s/ Emily L. Connor*
Emily L. Connor (#27402-49)

*Attorney for Respondent adidas America, Inc.*

LITTLER MENDELSON, P.C.
A Professional Corporation
111 Monument Circle, Suite 702
Indianapolis, IN  46204
Telephone:  317.287.3600
Facsimile:   317.636.0712
E-mail: econnor@littler.com

## CERTIFICATE OF SERVICE

     I hereby certify that I have this 23rd day of February, 2021, filed a copy of the foregoing *adidas America, Inc.'s Response in Opposition to Pacers Basketball, LLC's Motion to Quash Subpoena to Produce Documents* electronically. Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.

                         Stacy Walton Long
                         KRIEG DEVAULT LLP
                         One Indiana Square, Suite 2800
                         Indianapolis, Indiana 46204
                         Phone: (317) 238-6356
                         FAX: (317) 636-1507
                         Email: slong@kdlegal.com

                         */s/ Emily L. Connor*

4853-1196-7709.1 054970.1054