UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| Pacers Basketball, LLC, | ) | |
| | ) | |
|     Petitioner/Movant, | ) | |
| | ) | |
| v. | ) | CAUSE NO:  1:21-mc-0004-TWP-MJD |
| | ) | |
| adidas America, Inc., | ) | Related case: *Brian Bowen, II v. adidas* |
| | ) | *America, Inc., et al.*, Case No. 3:18-cv-3118 |
|     Respondent. | ) | JFA |

**PACERS BASKETBALL, LLC'S REPLY IN SUPPORT OF
MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS**

NOW COMES Petitioner Pacers Basketball, LLC ("PBLLC"), by counsel, and for its Reply in Support of its Motion to Quash Subpoena to Produce Documents (the "Motion"), respectfully states as follows:

**I.  Background**

On or about November 20, 2020, PBLLC received a nonparty subpoena ("Subpoena") issued by adidas America, Inc. ("adidas") in connection with the pending litigation, *Brian Bowen, II v. adidas America, Inc., et al.*, Case No. 3:18-cv-3118 ("Bowen Case"). The Subpoena is attached as Exhibit A to PBLLC's Motion. *See* Doc. No. 1. As extensively discussed in PBLLC's Motion, the Subpoena generally seeks highly protected proprietary information, which unequivocally qualifies as "trade secrets" under Indiana law. Therefore, PBLLC filed the Motion to bar the release of this information.[1] On February 23, 2021, adidas filed its response ("Response") to PBLLC's Motion. As discussed below, adidas' Response does nothing but affirm PBLLC's concerns raised in its Motion.

---

[1] PBLLC has responded to Requests No. 7 and 8, and adidas has received the information sought in Request No. 4. *See* Response, p.4.

## II.     Argument

PBLLC filed the Motion because of the immeasurable value it places on its internal basketball operations, such as how it evaluates, recruits, and scouts players. The Subpoena requests PBLLC to turn over this information, however, this information constitutes protectable trade secrets under Indiana law. As thoroughly addressed in the Motion, the release of this information would have a detrimental impact on PBLLC. A confidentiality order cannot curb PBLLC's concerns, which also was discussed in the Motion and will be reiterated here.

For discovery disputes concerning disclosure of trade secrets, federal courts generally apply a three-part balancing test to determine whether the information can be protected from discovery. *See Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525 (D.Del.2002). The party opposing discovery – here, PBLLC – must first show that the information sought is a trade secret or confidential commercial information, and that disclosing such information would be harmful. *Id.*; *see also* FRCP 26(c)(7). The burden then shifts to the party seeking discovery – here, adidas – to show that the information sought is relevant and necessary. *Mannington Mills, Inc.*, 206 F.R.D. at 525. If both parties satisfy their burdens, "the court must weigh the potential harm of disclosure against the need for the information in reaching a decision." *Id.*

For the first part of the analysis, PBLLC easily carried its burden in the Motion by showing that the information sought in the Subpoena is a trade secret or confidential commercial information, and the disclosure of such information would have an irreversible harmful effect on PBLLC. In the interest of judicial economy, PBLLC respectfully directs this court's attention to its Motion, which thoroughly addresses this first part of the analysis. The burden then shifts to

adidas to prove that the Subpoena seeks protected information that is relevant and necessary, which it failed to do.

Further, the general tone of the Response shows that there is a lack of understanding of the proprietary nature of the information sought in the Subpoena and its crucial impact on PBLLC's basketball operations specifically, and the overall business operations of PBLLC generally. The Response further shows a clear threat of irreparable harm if PBLLC is ordered to disclose its information. For these reasons, PBLLC's Motion must be granted, and the Subpoena quashed.

    A.  <u>The Subpoena Requests Trade Secrets and the Response Fails to Dispute That</u>

First and foremost, the Response does not refute any of PBLLC's contentions that the information requested in the Subpoena, such as its proprietary methods of evaluating current and prospective players and preparing related scouting reports, qualify as trade secrets. Instead, adidas misses the point of PBLLC's trade secret argument, and simply claims that it is not asking for PBLLC's protected trade secrets, only information as it relates to Brian Bowen, II ("Bowen"). This assertion is proof that adidas does not comprehend the extent of information it requests from PBLLC. Put simply, the protected information, such as the manner in which PBLLC evaluates players, cannot be separated from PBLLC's written evaluations, assessments, and other requested documentation in the Subpoena solely related to Bowen. The disclosure of requested information as it relates to Bowen would result in the disclosure of protected trade secrets that PBLLC utilizes to evaluate all players and make strategic and economic decisions.

The mere disclosure of PBLLC's evaluations of Bowen's skills and attributes inevitably discloses *how* PBLLC evaluates and ranks *all* players, not just Bowen. PBLLC applies its uniquely-created criteria to *all* current and prospective players when evaluating whether a player "fits" with the Indiana Pacers ("Pacers"), the professional basketball team owned and operated by

PBLLC. Consequently, Bowen's ranking and the assessment of his skillsets would inevitably show PBLLC's proprietary methods of evaluating players, as well as specific attributes it values in building a competitive team in the National Basketball Association ("NBA"). Certainly, adidas would agree that disclosure of its proprietary information and technology in creating a certain type of athletic shoe would reveal similar, if not the same, proprietary information in creating another type of athletic shoe. The Subpoena requests the evaluations or assessments of Bowen, which inevitably requests *how* PBLLC evaluates its prospective players. The two are inseparable – disclosing one aspect of information inevitably discloses the other.

    B.  <u>Adidas Fails to Carry its Burden</u>

Since PBLLC clearly met its burden, the burden then shifts to adidas to show that the information sought by the Subpoena is relevant and necessary, which it failed to do. *See Mannington Mills, Inc.*, 206 F.R.D. 525. Although adidas maintains that "documents regarding the Pacers' hiring of Mr. Bowen are not available from any source other than the Pacers," this misconstrues the nature of the Bowen Case. *See* Response, p.6. Indeed, as adidas' Response states, Bowen's claims against adidas are that he "lost future earnings because of the purported negative impact his failure to play Division I college basketball allegedly had on his prospects *as an NBA player*." *See* Response, p.3 (emphasis added). Moreover, throughout the whole Response, adidas concedes that the litigation centers on Bowen's "NBA career prospects."

In terms of relevance and necessity, PBLLC is certainly not the only entity or individual in possession of, or that can provide adidas with, information that may be relevant to adidas to defend the claims asserted in the Bowen Case. There are hundreds, if not thousands, of college coaches, recruiters, or professional scouts that are independent of adidas that could be retained as experts or consultants to discuss Bowen's skills, evaluate his talent level as compared to former, current,

4

or future NBA players and prospects, and whether his failure to play Division I college basketball had any impact on his prospects as an NBA player Further, the NBA consists of thirty (30) separate teams, which means there are twenty-nine (29) teams other than PBLLC that could offer their impressions of Bowen as a player and his prospects as a professional basketball player (then and now), although we assume each team will take a similar position as it relates to their protected trade secrets. Despite this wealth of other available sources, adidas maintains that PBLLC is the *only* one in possession of, and by implication the *only* one that could even know or be able to know, the information sought about Bowen. This is simply not the case. As shown, there are many others that could provide an expert assessment or evaluation of Bowen's NBA prospects and how they may or may not have been impacted by his failure to play Division I college basketball. Thus, adidas failed to carry its burden.

### C. The Equities Weigh in Favor of PBLLC

Since adidas failed to meet its burden in the three-part balancing test to determine whether the subject information can be protected from discovery, the court does not need to weigh the potential harm of disclosure against the need for the information in reaching the decision to protect the subject information from discovery. However, even if this court decides to undergo that analysis, the harm of disclosure clearly weighs in PBLLC's favor. Further, any confidentiality order would be insufficient. *See Mannington Mills, Inc.*, 206 F.R.D. 525.

Adidas' position that the existing confidentiality order is sufficient, especially because none of PBLLC's competitors are involved in the Bowen Case, is flawed, and clearly shows adidas' lack of understanding of the professional basketball business. Even though adidas is not a NBA team, it directly works with parties that can use the information being sought to their own advantage and to the disadvantage of PBLLC. As already addressed in the Motion, adidas' interests

are aligned with athletes, sports agents, and other institutions that often, whether in negotiations or otherwise, hold interests not aligned but in direct competition with PBLLC's. Any of them that gain insight into *how* PBLLC values and assesses its players will be detrimental to PBLLC, as they can use any information provided about PBLLC's evaluation and assessment processes against PBLLC, not only generally, but specifically in any future negotiations with Bowen or other players represented by Bowen's agent.

Despite adidas' assurances, PBLLC stands behind its statement that there is no protective order that would be sufficient to curb PBLLC's concerns of disclosure. Even with the strictest protections – including Attorneys' Eyes Only designations – it is inevitable that information regarding evaluations of Bowen – as well as how PBLLC evaluates players generally – will be shared with, or seen by, Bowen and adidas representatives in the Bowen Case. Adidas already revealed that it needed this information to defend against the claims in the Bowen Case, thus, PBLLC's trade secrets will be used in some capacity in the Bowen Case, whether in motions, briefs, depositions or trial. This risk of disclosure is something that PBLLC simply cannot afford.

Further, it is worth reiterating that Bowen is a current player with the Pacers and an employee of PBLLC, thus, this information cannot only be used by Bowen against PBLLC, but also by his own agent, who represents other athletes on other NBA teams. PBLLC is not claiming that adidas or its counsel will deliberately disclose the information publicly, but the fact remains that the information will no longer be confidential, especially between PBLLC and Bowen, as well as his agent. Also, PBLLC cannot ignore, and this court should take judicial notice of the specific allegations and recent convictions stated in the Bowen Case, including federal indictments, concerning the dishonesty of individuals then associated with adidas.

### D. Adidas Lacks Understanding of PBLLC's Trade Secrets

It is also necessary to note the overall tone of adidas' Response, which confirms adidas' lack of understanding of PBLLC's trade secrets, and that there is a legitimate threat of harm from disclosing PBLLC's trade secrets. The fact that adidas dismissed PBLLC's concerns because its proprietary information is not "the nuclear launch codes," underscores the very fact that adidas fails to understand and appreciate the value of the information PBLLC is seeking to protect, or simply does not care. Adidas is well aware of the value that NBA teams place on acquiring the best basketball players, and its dismissive tone causes much concern. Although PBLLC's proprietary methods of evaluating and recruiting prospective players are not the "nuclear launch codes," that does not lessen the importance of such information to PBLLC, nor alleviate the fact that such information is a trade secret, and thus, is subject to the same legal protections as any other trade secret. As extensively discussed in the Motion, the evaluations and assessments of current and prospective players is the crux of creating a competitive NBA basketball team, which directly impacts the overall economic success of the Pacers and the broader business operations of PBLLC. In the business of professional basketball, which is all that is relevant here, it is vitally important for PBLLC to ensure such information (i.e., the highest level of proprietary information maintained by PBLLC) is not disclosed to anyone outside of those associated with PBLLC that have a need to know such information, particularly a company with relationships with players, player agents, and others that can use such information against PBLLC. PBLLC's trade secrets in the hands of its competitors could cause catastrophic and irreversible economic damage to PBLLC.

In addition, the sarcastic tone taken by adidas' counsel is further evidence that even an "Attorneys' Eyes Only" confidentiality order would be insufficient, as adidas' counsel clearly do not understand or respect the type of information they are in fact requesting. Therefore, trusting an

"Attorneys' Eyes Only" confidentiality order to adequately protect PBLLC's interests, is not something PBLLC should be asked to do.

### III. Conclusion

PBLLC has undeniably demonstrated that the Subpoena is seeking highly protected trade secrets that give the Pacers a competitive and economic advantage in the NBA, a multi-billion dollar professional sports league. Despite this, adidas claims that PBLLC should just hand over the information and trust that the existing confidentiality order adequately protects the trade secrets. PBLLC has shown that it does not. Once the information is out, it can no longer be protected.

To conclude, adidas does not meet its burden and fails to even dispute that the information PBLLC wishes to protect is protected as trade secrets. Instead, adidas insists it is only requesting information as it pertains to Bowen, which demonstrates its lack of understanding of the true value of the information and the immeasurable negative impact on PBLLC if disclosed. Additionally, there are countless other professional organizations and individuals that could provide information for adidas to defend the Bowen Case. Finally, the threat of harm to PBLLC from disclosure severely outweighs the claimed necessity that adidas has for the information.

**WHEREFORE**, PBLLC respectfully moves this court for an Order Quashing the Subpoena, in part, served by adidas, and requests all other relief just and proper in the premises.

Respectfully submitted,

Stacy Walton Long
Stacy Walton Long, Attorney No. 25149-49
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Telephone: (317) 238-6356
Facsimile:  (317) 636-1507
E-Mail: slong@kdlegal.com

Alexander E. Porter, Attorney No. 36536-49
KRIEG DEVAULT LLP
33 N. Dearborn Street, Suite 1140
Chicago, Illinois  60602
Telephone: (312) 800-4011
Facsimile:  (312) 423-9303
E-Mail: aporter@kdlegal.com

Attorneys for Pacers Basketball, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Emily L. Connor
Econnor@littler.com

/s/ Stacy Walton Long
Stacy Walton Long

KD_13165247v1